SWANSON et al. v. LINGA et al.

(District Court, N. D. California, First Division. December 11, 1916.)

No. 16111.

SEAMEN ☞16—SHIPPING ☞69—WAGES—CAPTURE OF VESSEL AS PRIZE.

    The master and engineer of a neutral vessel, seized as prize by a belligerent, are not entitled to wages during the time they were held in custody as witnesses by the foreign government; it not appearing that they rendered any voluntary service to the vessel during such time.

    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 56–65; Dec. Dig. ☞16; Shipping, Cent. Dig. §§ 201, 293–307, 312, 313, 315, 317, 318; Dec. Dig. ☞69.]

In Admiralty. Suit by Martin Swanson and L. N. Bechtel against Carlos Linga and the Crowley Launch & Tugboat Company. On exceptions to libel. Exceptions sustained.

F. R. Wall, of San Francisco, Cal., for libelants.
Denman & Arnold, of San Francisco, Cal., for libelees.

DOOLING, District Judge. The libel avers: That the libelees are the owners of the power schooner Oregon, a merchant vessel under the flag of the United States; Linga being the owner of the greater part of said vessel, and operating it up to the time of her seizure on April 23, 1916. That on June 10, 1915, at San Francisco, libelant Martin Swanson was employed by the then master as second mate to serve upon the Oregon for the period of a year, and on June 23, 1915, at Mazatlan, the libelee Linga hired said Swanson to go as master of said vessel for the unexpired portion of said time, that is to say, until June 10, 1916. That on November 22, 1915, the master, presumably Swanson, hired libelant Bechtel as chief engineer, to serve as such until June 10, 1916. That on April 23, 1916, while the vessel was on a voyage from Mazatlan to Guaymas, laden with general cargo, and on the high seas, the vessel and her cargo were seized by the British cruiser Rainbow, and taken to Victoria, British Columbia, where she arrived on May 29, 1916, and where on May 30, 1916, the vessel and her cargo were turned over to the possession of the prize court by the captain of the Rainbow, and that "on said 30th of May each of said libelants was by said captain of said Rainbow placed in the custody of the marshal of said court, and each was kept by said marshal in said custody from said 30th day of May until the 3d day of September, 1916, in order to compel each thereof to give testimony before said court. That each of said libelants gave testimony before said court, and that it was a duty owed by each of them to the owners of said vessel and cargo, and to all persons interested in said vessel, to give such testimony." That no wages have been paid libelants from said May 29th, and that there is due to each of them the sum of $391.66; this being the amount that would be due, at the monthly rate for which they had been hired, for the period intervening between May 30th, when they were put into the custody of the marshal, until September 3d, when presumably they testified before the prize court.

It does not appear from the libel whether or not the vessel was condemned. The action is therefore apparently for payment, at the rate at which they had been employed, for the time that they were held as witnesses in the custody of the marshal of the prize court. It has been frequently held that upon the capture of a neutral vessel by a belligerent it is the duty of the master to remain by the ship until a condemnation, or until all hope of recovery is gone, and that he is intrusted with authority and obligation to interpose a claim for the property before the proper tribunal, and to endeavor by all means in his power to make a just and proper defense, and that, as these are his duties, he is entitled to receive compensation for his services in performing them, such compensation to be paid by the owner of the ship in the first instance, and ultimately as a general average charge by all the parties in interest. In the instant case it does not appear that libelants remained by the ship until condemnation, or until hope

of recovery was gone. Indeed, so far as one can gather from the libel, they did not remain by the ship voluntarily at all. Their suit is for the exact period during which they were in custody of the marshal of the prize court; the averment of the libel being:

"And each was kept by said marshal in said custody from said 30th day of May until the 3d day of September, 1916, in order to compel each thereof to give testimony before said court. That each of said libelants gave testimony before said court, and that it was a duty owed by each of them to the owners of said vessel and cargo, and to all persons interested in said vessel, to give such testimony."

As it is not averred that any service was performed after September 3d, when they were discharged from the custody of the marshal, it must be assumed that their services, whatever they were, ceased on that day. So that the real cause of action is, not for any voluntary services performed for the ship or its owners, but for compensation for a period during which they were involuntarily held as witnesses by a foreign government, whose subjects were equally interested with the owners of the vessel in the result of the proceedings in the prize court. Had the libelants, in an honest endeavor to save the ship and its cargo for their owners, remained voluntarily by the ship until condemnation, or until all hope of recovery was gone, their case would fall within principles fairly well settled. But they did not do so, and apparently after their release from custody, so far, at least, as the libel discloses, they had no further interest in the proceedings. For such involuntary services performed on the constraint of the captors, and it may be for their benefit, they have no claim upon the owners. The exceptions to the libel in this respect will therefore be sustained.

It is averred, however, that libelant Swanson, while master and before the capture, had expended $96.10 of his own money as necessary disbursements for the vessel. This amount, if his averment be true, he is entitled to recover.

It is therefore ordered that the exceptions which challenge the sufficiency of the libel to state a cause of action for the period during which libelants were detained as witnesses in the custody of the prize court be sustained.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes